IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE, GREENEVILLE, TENNESSEE

| | |
|---|---|
| TVMS, INC. | * |
| Plaintiff | * |
| VS. | * CIVIL ACTION NO. _____ |
| KINGSPORT BOOK, LLC, DICKINSON PRESS, LLC, BLACKFORD CAPITAL ASSOCIATES, II, INC., and PRINTING CONSOLIDATION COMPANY, LLC | * |
| Defendants | * |

## COMPLAINT

### Parties and Jurisdiction

1. Plaintiff, TVMS, Inc. (formerly known as Tennessee Valley Manufacturing Solutions, Inc.), is a Tennessee corporation with its principal place of business at 121 Press Road, Church Hill, Tennessee 37642.

2. Defendant, Kingsport Book, LLC ("Kingsport Book"), is a Delaware limited liability company with its principal place business at 190 Monroe Avenue NW, Suite 600, Grand Rapids, Michigan 49503.

3. Defendant, Dickinson Press, LLC ("Dickinson Press") is a Delaware limited liability company with its principal place business at 190 Monroe Avenue NW, Suite 600, Grand Rapids, Michigan 49503.

4. Defendant, Blackford Capital Associates, II, Inc. ("Blackford") is a Michigan corporation with it principal place business at 190 Monroe Avenue NW, Suite 600, Grand Rapids, Michigan 49503.

5. Defendant, Printing Consolidation Company, LLC ("PCC"), is a Delaware limited liability company with it principal place business at 190 Monroe Avenue NW, Suite 600, Grand Rapids, Michigan 49503.

6.     This Honorable Court has original jurisdiction over this civil action pursuant to 28 USC § 1332, diversity of citizenship, as the matter in controversy exceeds $75,000.00, exclusive of interests and costs and is between citizens of different states, as set forth in Paragraph 1 – 5 above.

7.     This civil action concerns various tortious acts committed by Defendants in Hawkins county, Tennessee, the principal place of business of Plaintiff, same being located at 121 Press Road, Church Hill, Tennessee, 37642. As such, venue is proper in the Eastern District of Tennessee pursuant to 28 USC § 1391(b)(2).

## 2017 Asset Purchase Transaction

8.     Pursuant to Asset Purchase Agreement dated October 31, 2017, Plaintiff sold its printing business and substantially all of its assets (collectively the "Business") to Kingsport Book. Under the terms of the Asset Purchase Agreement, Kingsport Book agreed to pay a purchase price of $1,050,000 subject to various accounting adjustments. Pursuant to the Asset Purchase Agreement, Kingsport Book paid TVMS the sum of $262,500 at closing and delivered its Promissory Note in the amount of $787,500 (the "2017 Purchase Money Note"). A copy of the Promissory Note is attached as <u>Exhibit A</u> to this Complaint.

9.     Defendant, Dickinson Press guaranteed payment of all indebtedness under the 2017 Purchase Money Note. A copy of the Guaranty of Dickinson Press is attached hereto as <u>Exhibit B</u>.

10.    As collateral for the 2017 Purchase Money Note, Kingsport Book executed a Subordinated Security Agreement dated October 31, 2017 granting to Plaintiff a subordinated security interest in all of Kingsport Book's property. A copy of the Subordinated Security Agreement is attached hereto as <u>Exhibit C</u>.

11.    In connection with the closing of the Asset Purchase Agreement, Kingsport Book required that Fred Cooper and Rick Jennings, the principals and owners of TVMS, Inc., enter into Employment Agreements with Kingsport Book, which they did.

## Defendants' Control Group

12.    At all times material to this lawsuit, Blackford was the prime parent entity of PCC, Dickinson Press, and Kingsport Book. At all times material to this lawsuit, Blackford, PCC, Dickinson Press, and Kingsport Book shared the same principal corporate offices at 190 Monroe Avenue NW, Suite 600, Grand Rapids, Michigan.

13.    At all times material to this lawsuit, Blackford owned the majority and controlling interest in PCC. On information and belief, Plaintiff alleges that PCC's primary function was to own and manage Dickinson Press and Kingsport Book.

14. At all times material to this lawsuit, Dickinson Press was a subsidiary of Blackford and/or PCC. On information and belief, Plaintiff alleges that Blackford acquired ownership of Dickinson Press in August, 2015.

15. On October 19, 2017, Blackford and PCC formally organized Kingsport Book for the express purpose of acquiring the Business from Plaintiff. In organizing Kingsport Book, Blackford and PCC elected to make Kingsport Book a subsidiary of PCC and/or Dickinson Press.

16. At all times material to this lawsuit, Blackford, PCC, Kingsport Book, and Dickinson Press operated out of the same executive office in Grand Rapids, Michigan and operated under the direction of the same CEO and a management team which included one or more other common senior executives. At all times material to this lawsuit, Martin Stein was the CEO of each of the Defendants - Blackford, PCC, Dickinson Press, and Kingsport Book. In addition to Martin Stein, Blackford, PCC, Kingsport Book and Dickinson Press shared one or more other common executive officers, managers, and/or directors including the following:

(a) Aaron Day was an executive officer of both Blackford and PCC with direct responsibility for Dickinson Press and Kingsport Book.
(b) Matthew Pfenning, an executive officer of Blackford, was regularly involved in the business of Kingsport Book and was physically present at Kingsport Book's offices in Hawkins County, Tennessee multiple times each month.
(c) James Cook, an executive officer of Blackford, was regularly involved in the business of Kingsport Book
(d) Stephen Parker, an executive officer of Blackford, was regularly involved in the business of Kingsport Book
(e) One or more Blackford representatives regularly attended Kingsport Book's weekly management conference telephone calls.

17. Upon information and belief, Plaintiff alleges that, at all times material to this lawsuit, Kingsport Book and Dickinson Press each had management, consulting or advisory agreements with Blackford and/or PCC.

18. By virtue of (i) the common executive management shared by Blackford, PCC, Kingsport Book, and Dickinson Press, (ii) the subsidiary and affiliate relationships of PCC, Kingsport Book, and Dickinson Press under the Blackford corporate umbrella, and (iii) the management, consulting or advisory agreements which Blackford and/or PCC had with both Kingsport Book and Dickinson Press, Blackford and PCC exercised absolute dominion and control over Kingsport Book and Dickinson Press.

### Events Leading to Lawsuit

19. At the time the Asset Purchase Agreement between Plaintiff and Kingsport Book was consummated on October 31, 2017, Plaintiff had been in the printing business for 14 years. In the last 6 calendar years prior to Plaintiff's sale of the Business to Kingsport Book, Plaintiff had aggregate annual **earnings** totaling $499,064 broken down as follows:

December 31, 2011 - $ 79,116
December 31, 2012 -   (3,183)
December 31, 2013 -  27,771
December 31, 2014 - 121,613
December 31, 2015 - 114,007
December 31, 2016 - 159,740

20. Upon acquiring Plaintiff's Business, Kingsport Book, Blackford and PCC immediately implemented a series of significant changes in the management and operation of Plaintiff's Business. In particular, Kingsport Book, acting under the dominion, control and direction of Blackford and PCC made a series of imprudent, demonstrably unreasonable business decisions including (i) hiring new employees at compensation levels dramatically in excess of what would have been reasonably required for the experience and skill sets of the employees who were hired, and (ii) undertaking extravagant and unnecessary leasehold improvements, and (iii) acquiring expensive equipment, expensive furniture, and other items unnecessary for the operation of the Business. These decisions created immediate significant financial stress for Kingsport Book and clearly were not justified by the revenues and operating history of the Business.

21. By virtue of the due diligence undertaken by Blackford and PCC prior to acquiring the Business from Plaintiff, Blackford, PCC, and Kingsport Book knew, or in the exercise of reasonable business judgment should have known, that the compensation paid to certain new employees was excessive for the corresponding duties of such employees, the magnitude of the leasehold improvements was extravagant, imprudent and unnecessary, and much of the equipment, furniture, and other items which Blackford, PCC and Kingsport Book acquired was unnecessary for the operation of the Business, and the expense resulting from those decisions was not justified by the historical revenues and profitability of the Business.

22. In short, upon acquiring Plaintiff's Business, Blackford, PCC, and Kingsport Book engaged in a continuous pattern of gross mismanagement which caused Kingsport Book to become unprofitable in a matter of only a few months and which essentially destroyed the value of the Business.

23. After operating the Business for period of six (6) months, Kingsport Book found it necessary to find a new secured lender to provide financing for the Business. In April, 2018, Kingsport Book, under the direction and control of Blackford, PCC and Dickinson Press, obtained a new financing arrangement from Gibraltar Capital to replace a credit facility which had been provided by Mercantile Bank at the time Kingsport Book acquired the Business from Plaintiff. The Gibraltar credit facility was arranged hastily by Defendants and with great urgency. Defendants insisted upon Plaintiff's immediate cooperation on a subordinated basis. Notwithstanding Plaintiff's request for information as to the amount, terms and scope of the Gibraltar financing, Defendants refused to provide any such information to Plaintiff. Acting under the Defendants' pressure and duress including threats that the future of Kingsport Book was jeopardy, Plaintiff agreed to subordinate its secured position for the 2017 Purchase Money

Note as required by Gibraltar, consistent with Plaintiff's original subordinated position to Mercantile Bank pursuant to the Asset Purchase Agreement.

24. On information and belief, Plaintiff alleges that, at the time Kingsport Book acquired the Business from Plaintiff, and/or at the time Kingsport Book obtained the new financing from Gibraltar Capital, Blackford, PCC and Dickinson Press caused Kingsport Book to pledge the Kingsport Book assets to secure both Kingsport Book's credit facilities and credit facilities of Dickinson Press. To that end, in 2 separate Uniform Commercial Code financing statements filed with the Delaware Secretary of State on the same day, March 23, 2018, Gibraltar Capital filed comprehensive blanket security interests against the assets of both Kingsport Book and Dickinson Press. The effect of such financing arrangements was to significantly and imprudently increase the aggregate debt secured by Kingsport Book and its assets and thereby damage the value of the Plaintiff's position as a subordinated secured creditor of Kingsport Book.

25. Plaintiff alleges that Blackford, PCC and Dickinson Press arranged, negotiated and directed Kingsport Book's new financing with Gibraltar Capital. Plaintiff further alleges that Kingsport Book's new financing with Gibraltar Capital was contingent upon and subject to the consent and approval of Blackford, PCC and Dickinson Press, which consent and approval Blackford, PCC and Dickinson Press did in fact grant.

26. On information and belief, Plaintiff alleges that Blackford and PCC structured Gibraltar's loan in a manner which provided financing to Kingsport Book and Dickinson Press based upon a consolidated borrowing base, using the combined accounts receivable and other assets of both Kingsport Book and Dickinson Press. The effect of this arrangement was to effectively commingle and jointly leverage the assets of Kingsport Book and Dickinson Press to create greater debt than Kingsport Book could have justified based upon its own balance sheet. The effect of this arrangement was to overleverage the balance sheet of Kingsport Book thereby substantially damaging the value of Plaintiff's subordinated security position with Kingsport Book under the 2017 Purchase Money Note. (EXHIBIT A).

27. At the time Blackford, PCC and Dickinson Press arranged the financing with Gibraltar, Blackford, PCC and Dickinson Press each knew of the subordinated financing held by Plaintiff under the 2017 Purchase Money Note. Plaintiff alleges that, based upon the dominion and control exercised by Blackford, PCC, and Dickinson Press over Kingsport Book, and based upon the management, consulting or advisory agreements between Blackford and/or PCC and Kingsport Book, and based upon the fact that Blackford, PCC, and Dickinson Press had knowledge of Plaintiff's subordinated creditor position under the 2017 Purchase Money Note, Blackford, PCC and Dickinson Press each had a fiduciary duty not to use the assets and Business of Kingsport Book in a manner prejudicial to the financial interests of Plaintiff.

28. Notwithstanding the new financing from Gibraltar, Defendants continued to manage and operate Kingsport Book in a reckless and grossly negligent manner and failed to protect the value of the Business which had been created under Plaintiff's ownership.

29. On or about September 25, 2018, eleven (11) months after Kingsport Book acquired Plaintiff's Business, Plaintiff received an urgent communication from Defendants stating that it was imperative that Plaintiff cooperate in the sale of Kingsport Book's assets to a new purchaser. Defendants repeatedly warned Plaintiff that Kingsport Book was about to fail and would be closed and shuttered if Plaintiff did not cooperate in surrendering or transferring its secured position under the 2017 Purchase Money Note as required by Defendants. Defendants further warned Plaintiff that the 45 employees working for Kingsport Book would all lose their jobs if the Kingsport Book assets were not sold according to Defendants' demand.

30. Plaintiff's owners, Fred Cooper and Rick Jennings, founded the Business in 2003 and nurtured the Business to a position of consistently profitable financial performance which provided employment for approximately 45 employees. Acting under the duress of Defendants' urgent and strident demands and desiring to protect Plaintiff's employees, Plaintiff's owners agreed to cooperate in the sale of the Business in order to salvage the employment of 45 employees. At literally the eleventh hour under Defendants' urgent deadline, Defendants provided to Plaintiff a contract whereby Plaintiff would transfer the 2017 Purchase Money Note and the subordinated security position to the purchaser of Kingsport Book, Sheridan Publishing Grand Rapids, Inc. (herein "Sheridan") for the sum of $50,000. At that time, the total outstanding indebtedness under the 2017 Purchase Money Note at that date was approximately $525,000. With the fate of 45 employees resting in their hands, and relying upon the urgent and dire demands made by Defendants that Plaintiff cooperate with the sale, Plaintiff agreed to transfer the 2017 Purchase Money Note to Sheridan for the payment of $50,000. By virtue of such transaction, Plaintiff incurred a loss of $475,000.

## COUNT I - Breach of Fiduciary Duty

31. The allegations set forth in paragraphs 1 through 30 are incorporated herein by reference.

32. Plaintiff alleges that the dominion and control exercised by Blackford, PCC and Dickinson Press over Kingsport Book created a fiduciary duty on the part of Blackford, PCC and Dickinson Press to protect the interests of Plaintiff as the holder of the 2017 Purchase Money Note and a subordinated security position.

33. Plaintiff alleges that Blackford, PCC and Dickinson Press breached their fiduciary duty to Plaintiff by:

    (a) engaging in a concerted and reckless pattern of managing and operating Kingsport Book;

    (b) overleveraging the balance sheet of Kingsport Book to support the indebtedness of Dickinson Press;

    (c) causing Kingsport Book to make business decisions which were unreasonable and grossly negligent including but not limited to (i) hiring new employees at compensation levels dramatically in excess of what would have been reasonably required for the

experience and skill sets of the employees who were hired, and (ii) undertaking extravagant and unnecessary leasehold improvements, and (iii) acquiring expensive equipment, expensive furniture, and other items unnecessary for the operation of the Business.

34. The breach of fiduciary duty by Blackford, PCC and Dickinson Press caused Plaintiff to incur a loss of $475,000.

## COUNT II - Tortious Interference with Contractual Rights

35. The allegations set forth in paragraphs 1 through 34 are incorporated herein by reference.

36. Plaintiff alleges that the gross negligence, mismanagement, and breach of fiduciary duty by Blackford, PCC and Dickinson Press caused Kingsport Book to be unable to honor its obligations to Plaintiff under the 2017 Purchase Money Note and Subordinated Security Agreement.

37. Plaintiff alleges that the actions of Blackford, PCC and Dickinson Press constitute tortious interference with the contractual rights of Plaintiff under its 2017 Purchase Money Note and its Security Agreement and the Guaranty of Dickinson Press.

38. The gross negligence, mismanagement, and breach of fiduciary duty by Blackford, PCC and Dickinson Press caused Plaintiff to incur a loss of $475,000.

## COUNT III - Fraud and Negligent Misrepresentation

39. The allegations set forth in paragraphs 1 through 38 are incorporated herein by reference.

40. At the time Blackford, PCC and Dickinson Press arranged the loan from Gibraltar, Blackford, PCC and Dickinson Press urgently demanded that Plaintiff agree to subordinate the 2017 Purchase Money Note and Security Agreement to the Gibraltar loan.

41. In response to this demand from Blackford, PCC and Dickinson Press, Plaintiff requested information as to the amount, scope, and terms of the Gibraltar financing, which information Blackford, PCC and Dickinson Press refused to provide.

42. At the time Blackford, PCC and Dickinson Press urgently demanded that Plaintiff subordinate the 2017 Purchase Money Note and Security Agreement to the Gibraltar loan, Blackford, PCC and Dickinson Press knew, and failed to disclose to Plaintiff notwithstanding Plaintiff's request for information, that the Gibraltar loan would be jointly structured with Dickinson Press under a consolidated borrowing base in a manner which would significantly increase the amount of debt secured by the assets of Kingsport Book.

43. Acting under the pressure and duress of Blackford, PCC and Dickinson Press including aggressive and hostile threats that the future of Kingsport Book and its 45 employees

was jeopardy, Plaintiff agreed to subordinate its secured position for the 2017 Purchase Money Note as demanded by Blackford, PCC and Dickinson Press.

44. The knowing and intentional failure of Blackford, PCC and Dickinson Press to disclose to Plaintiff the information as to amount, scope, and terms of the Gibraltar financing which adversely affected Plaintiff's legal rights and legal position under the 2017 Purchase Money Note and Security Agreement, constitutes fraud and actionable concealment of material information.

45. Alternatively, the failure of Blackford, PCC and Dickinson Press to disclose to Plaintiff the information as to amount, scope, and terms of the Gibraltar financing which adversely affected Plaintiff's legal rights and legal position under the 2017 Purchase Money Note and Security Agreement, constitutes negligent misrepresentation and actionable concealment of material information.

46. The fraud, negligent misrepresentation, and/or actionable concealment of material information by Blackford, PCC and Dickinson Press caused Plaintiff to incur a loss of $475,000.

## COUNT IV - Fraudulent Transfers

47. The allegations set forth in paragraphs 1 through 46 are incorporated herein by reference.

48. Pursuant the Tennessee Uniform Fraudulent Transfer Act, T.C.A. 66-3-302, an "insider" of Kingsport Book includes a "person in control of Kingsport Book." Plaintiff alleges that, at all times material to this lawsuit, Blackford was a "person in control of Kingsport Book" for purposes of the Tennessee Uniform Fraudulent Transfer Act.

49. Pursuant the Tennessee Uniform Fraudulent Transfer Act, T.C.A. 66-3-302, an "insider" of Kingsport Book includes a "person in control of Kingsport Book." Plaintiff alleges that, at all times material to this lawsuit, PCC was a "person in control of Kingsport Book" for purposes of the Tennessee Uniform Fraudulent Transfer Act.

50. Pursuant the Tennessee Uniform Fraudulent Transfer Act, T.C.A. 66-3-302, Plaintiff alleges that, at all times material to this lawsuit, Dickinson Press, as the subsidiary of Blackford and PCC and the direct parent entity of Kingsport Book, was also a "person in control of Kingsport Book" for purposes of the Tennessee Uniform Fraudulent Transfer Act.

51. Pursuant the Tennessee Uniform Fraudulent Transfer Act, T.C.A. 66-3-302, an "affiliate" of Kingsport Book includes (A) a person who directly or indirectly owns, controls, or holds with power to vote, twenty percent (20%) or more of the outstanding voting securities of Kingsport Book, and (D) a person who operates Kingsport Book's business under a lease or other agreement or controls substantially all of Kingsport Book's assets. Plaintiff alleges that, at all times material to this lawsuit, Blackford, PCC and Dickinson Press were "affiliates" of Kingsport Book for purposes of the Tennessee Uniform Fraudulent Transfer Act.

52. Pursuant the Tennessee Uniform Fraudulent Transfer Act, T.C.A. 66-3-306, "a transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if (i) the transfer was made to an insider for an antecedent debt, (ii) the debtor was insolvent at that time, and (iii) the insider had reasonable cause to believe that the debtor was insolvent."

53. Pursuant the Tennessee Uniform Fraudulent Transfer Act, T.C.A. 66-3-303, the insolvency tests include the following:

> (a) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation; or
>
> (b) A debtor who is generally not paying such debtor's debts as they become due is presumed to be insolvent.

54. Pursuant the Michigan Voidable Transactions Act, Section 566.31(a), an "affiliate" of Kingsport Book includes (A) a person who directly or indirectly owns, controls, or holds with power to vote, twenty percent (20%) or more of the outstanding voting securities of Kingsport Book, and (D) a person who operates Kingsport Book's business under a lease or other agreement or controls substantially all of Kingsport Book's assets. Plaintiff alleges that, at all times material to this lawsuit, Blackford, PCC and Dickinson Press were "affiliates" of Kingsport Book for purposes of the Michigan Voidable Transactions Ac.

55. Pursuant the Michigan Voidable Transactions Act, Section 566.31(h), an "insider" of Kingsport Book includes an "affiliate" of Kingsport Book. Plaintiff alleges that, at all times material to this lawsuit, Blackford, PCC and Dickinson Press were "affiliates" of Kingsport Book and therefore were "insiders" of Kingsport Book for purposes of the Michigan Voidable Transactions Act.

56. Pursuant the Michigan Voidable Transactions Act, Section 566.32, the insolvency tests include the following:

> (a) A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets; or
>
> (b) A debtor that is generally not paying the debtor's debts as they become due other than as a result of a bonafide dispute is presumed to be insolvent.

57. Pursuant the Michigan Voidable Transactions Act, Section 535(2) a transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if (i) the transfer was made to an insider for an antecedent debt, (ii) the debtor was insolvent at that time, and (iii) the insider had reasonable cause to believe that the debtor was insolvent.

58. Plaintiff alleges that soon after Kingsport Book's acquisition of Plaintiff's Business, Blackford, PCC, and Dickinson Press, in the exercise of their complete dominion and

control over Kingsport Book, caused Kingsport Book to engage in a series of demonstrably bad business decisions which created immediate financial stress for Kingsport Book. On information and belief, Plaintiff alleges that soon after Kingsport Book's acquisition of Plaintiff's Business, the aggregate debts of Kingsport Book were greater than the aggregate value of Kingsport Book's assets at a fair valuation. Further, on information and belief, Plaintiff alleges that soon after Kingsport Book's acquisition of Plaintiff's Business, Kingsport Book encountered difficulty generally paying its debts as they became due.

59. Notwithstanding Kingsport Book's increasingly dire financial situation, Plaintiff alleges that Blackford and/or PCC and/or Dickinson Press continued to collect management, consulting and advisory compensation from Kingsport Book while having full knowledge of Kingsport Book's insolvency. Plaintiff alleges that Blackford, PCC and Dickinson Press caused Kingsport Book to pay management, consulting and advisory compensation to Blackford and/or PCC and/or Dickinson Press during the period from October 31, 2017 through the sale of Kingsport Book on or about October 5, 2018 while having full knowledge of Kingsport Book's insolvency.

60. On information and belief, Plaintiff alleges that simultaneously with the closing of the sale of Kingsport Book and Dickinson Press, Blackford and/or PCC and/or Dickinson Press caused Kingsport Book to pay any outstanding management, consulting and advisory fees and compensation which had not been previously paid by Kingsport Book while having full knowledge of Kingsport Book's insolvency.

61. Pursuant to the Tennessee Uniform Fraudulent Transfer Act, T.C.A. 66-3-301 et seq. and pursuant to the Michigan Voidable Transactions Act, Section 566.31 et seq., Plaintiff is entitled to avoidance and recovery of the transfers made by Kingsport Book in favor of Blackford, PCC, and Dickinson Press between from October 31, 2017 through the sale of Kingsport Book on or about October 5, 2018, and the avoidance and recovery of any other transfers which occurred whereby monies, property or other value of Kingsport Book was transferred to or realized by Blackford, PCC, and Dickinson Press and which constitute fraudulent transfers under the Tennessee Uniform Fraudulent Transfer Act, T.C.A. 66-3-301 *et. seq.* or the Michigan Voidable Transactions Act, Section 566.31 et seq. By way of example, and without limiting the foregoing, Plaintiff alleges that:

(a) The pledging of Kingsport Book's assets by Blackford, PCC and Kingsport to secure indebtedness of Dickinson Press constituted a transfer of assets for the benefit of an insider.

(b) Plaintiff's transfer of the 2017 Purchase Money Note to Sheridan, as demanded by Blackford, PCC and Dickinson Press through duress and coercion forced upon Plaintiff, resulted in the termination of Dickinson Press's Guaranty of the 2017 Purchase Money Note, thereby relieving Dickinson Press of a liability of approximately $475,000. Plaintiff alleges that the termination of the Dickinson Press Guaranty represents a transfer for the benefit of an insider is avoidable and recoverable by Plaintiff under the Tennessee Uniform Fraudulent Transfer Act and the Michigan Voidable Transactions Act.

## COUNT V- Inducement to Breach Contract

62. The allegations set forth in Paragraphs 1 through 51 are incorporated herein by reference.

63. At all times material to this lawsuit, Blackford, PCC and Dickinson Press had actual knowledge of Kingsport Book's 2017 Purchase Money Note and Subordinated Security Agreement held by Plaintiff.

64. At all times material to this lawsuit, Blackford, PCC and Dickinson Press knew that the ability of Kingsport Book to perform its obligations to Plaintiff under the 2017 Purchase Money Note and Subordinated Security Agreement was subject to the effectiveness of the management, oversight, direction and advice provided to Kingsport Book by Blackford, PCC and Dickinson Press.

65. At the time Blackford, PCC and Dickinson Press arranged the Gibraltar loan, Blackford, PCC and Dickinson Press knew that the manner in which the Gibraltar loan was combined with a loan to Dickinson Press would have a substantially negative effect on the collateral and legal position held by Plaintiff under the 2017 Purchase Money Note and Subordinated Security Agreement.

66. Notwithstanding their knowledge of the importance of operating Kingsport Book in a prudent manner, and notwithstanding their knowledge that the 2017 Purchase Money Note and Subordinated Security Agreement held by Plaintiff would be adversely affected by the overleveraging of the assets of Kingsport Book to support the Gibraltar loan to Dickinson Press, Blackford, PCC and Dickinson Press exercised their dominion and control over Kingsport Book to complete the Gibraltar loan.

67. The cumulative effect of the actions of Blackford, PCC, and Dickinson Press in exercising complete dominion and control over Kingsport Book induced and caused Defendant Kingsport Book to breach its contractual obligations to Plaintiff under the 2017 Purchase Money Note and the Security Agreement.

68. As a result of these actions of Blackford, PCC, and Dickinson Press in causing Kingsport Book to breach its contractual obligations to Plaintiff under the 2017 Purchase Money Note and the Security Agreement, Plaintiff incurred a loss of $475,000.

69. Pursuant to T.C.A. 47-50-109, Plaintiff is entitled to treble damages jointly and severally from Blackford, PCC and Dickinson Press in the amount of $1,425,000 for inducing and procuring the breach of Kingsport Book's contractual obligations to Plaintiff.

**WHEREFORE**, Plaintiff prays for relief as follows:

1. That proper process be issued for service upon each Defendant.

2. That Plaintiff have and receive a judgment against Defendants Blackford, PCC, Dickinson Press, and Kingsport Book, jointly and severally, in the amount of $475,000 representing the damages incurred by Plaintiff for the unpaid balance owed to Plaintiff under the 2017 Promissory Note.

3. That Plaintiff have and receive an award of treble damages in the amount of $1,425,000 against Defendants Blackford, PCC, and Dickinson Press, jointly and severally, for inducing and procuring the breach of Defendant Kingsport Book's contractual obligations to Plaintiff.

4. That Plaintiff have and receive pre-judgment interest jointly and severally against each Defendant retroactive to October 5, 2018.

5. That Plaintiff have and receive such other and further general relief as it may be entitled.

**PLAINTIFF DEMANDS A JURY TRIAL IN THIS CAUSE.**

HUNTER, SMITH & DAVIS, LLP

By: _____
William C. Argabrite
Tennessee BPR No. 006080

By: _____
William C. Bovender
Tennessee BPR No. 000751

Post Office Box 3740
1212 North Eastman Road
Kingsport, Tennessee 37664
(423) 378-8800; Fax: (423) 378-8809